UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LARMORE MACLIN,                )
                               )
    Plaintiff,                 )
                               )
                               )   Case No. 4:22-CV-00865
  vs.                          )
                               )
CITY OF ST. LOUIS, et al.,     )
                               )
    Defendants.                )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment. ECF No. 42. For the reasons set forth below, the motion will be granted.

## BACKGROUND

Plaintiff Larmore Maclin filed this civil rights action against St. Louis Metropolitan Police Officer Kimberly Hayes, Hayes's supervisors, and the City of St. Louis, alleging thirteen claims arising from his arrest in 2020. Against Hayes, Maclin asserts claims under 42 U.S.C. § 1983 for Fourth and First Amendment violations (Counts I and VII) and a state law claim for false imprisonment (Count XIII). In the remaining counts, Maclin asserts § 1983 claims against Hayes's supervisors and the City for failure to train, failure to supervise, and unconstitutional customs relating to Hayes's Fourth and First Amendment violations.

In October 2022, Defendants moved to dismiss the complaint on theories of qualified immunity, official immunity, and sovereign immunity. ECF No. 27. Because the parties repeatedly cited materials outside the pleadings in their briefing on Defendants' motion, the Court converted the motion to dismiss into a motion for summary judgment and directed the parties to submit further briefing on the issue of qualified immunity. ECF No. 37. Defendants

later filed the present motion for summary judgment, and the motion is fully briefed.  In support of their memoranda, the parties have attached a copy of the dispatch call notes related to Maclin's arrest and deposition testimony from Hayes, Hayes's partner, and Maclin.  The facts on this record, viewed in the light most favorable to Maclin, are as follows.

**Facts**

On May 20, 2020, Hayes and her partner were dispatched to an apartment building after a security guard reported a violent altercation between two residents.  When they arrived at the building lobby, they interviewed the security guard and one of the residents in the altercation, James Taylor.  Taylor explained to the officers that he had a heated dispute with Maclin.  At some point, he thought Maclin was about to hit him, so he lifted up his shirt to display a gun in his waistband to scare Maclin away.  Maclin then quickly approached him, punched him in the jaw, and left.

After Taylor recounted the incident, Hayes and her partner spoke to Maclin at his apartment.  Maclin admitted that he punched Taylor and agreed to go to the downstairs lobby with the officers to resolve his dispute with Taylor.  Before doing so, Maclin went inside his apartment to grab his phone and keys and, when he turned around, found Hayes "standing pretty much in [his] living room." ECF No. 44-3 at 68:19-21.  Maclin alleges that he felt "completely petrified" by Hayes entering his apartment without his consent, but Maclin still agreed to go downstairs with the officers. *Id.* at 69:13.  When they returned to the lobby, Maclin became more agitated, began to yell, and attempted to confront Taylor.  Eventually, Hayes told her partner to arrest Maclin.  This occurred after she heard Maclin threaten to file a complaint against her.

**Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants argue that Hayes is entitled to qualified immunity on Maclin's Fourth Amendment claim because it was objectively reasonable for Hayes to enter Maclin's apartment to ensure that Maclin did not retrieve a gun.  They argue that Hayes is entitled to qualified immunity on Maclin's First Amendment claim because there was a non-retaliatory ground for arresting Maclin: he had just admitted to hitting someone.  And because Maclin's constitutional claims against Hayes must fail, Defendants argue that his municipal liability and supervisory liability claims must fail as well.

## LEGAL STANDARDS

**Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the non-moving party.  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).  To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation.  *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017).  Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Qualified Immunity**

Qualified immunity "shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Ivey v. Audrain Cnty.*, 968 F.3d 845, 848 (8th Cir. 2020) (quoting *Thiel v. Korte*, 954 F.3d 1125, 1128 (8th Cir. 2020)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. *Brown*, 574 F.3d at 499; *See also, Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017); *Blazek v. City of Iowa City*, 761 F.3d 920, 922-23 (8th Cir. 2014).

The Court may address the questions in either order, but a § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If either question is answered in the negative, the public official is entitled to qualified

immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). Thus, to avoid summary judgment, Maclin must produce sufficient evidence to create a genuine issue of fact as to whether Hayes violated a clearly established constitutional right. *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017).

## DISCUSSION

### A. Fourth Amendment Claim (Count I)

In Count I, Maclin alleges Hayes violated the Fourth Amendment by entering his apartment without a warrant, probable cause, or consent.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation omitted). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Id.* One such exception is an officer's objectively reasonable belief that some immediate act is required to preserve officer safety. *United States v. Quarterman*, 877 F.3d 794, 797 (8th Cir. 2017).

Defendants argue Hayes reasonably believed that Maclin threatened her safety when he went back inside his apartment. They claim that, "[a]t some point, Hayes learned a gun was involved in the altercation between the neighbors, but she did not know which neighbor had the gun" when she interviewed Maclin. ECF No. 44 at p. 1.[1] Because Maclin had just been violent, and Hayes thought Maclin could have a gun, Defendants argue that Hayes reasonably believed

---

[1] Defendants' support for their assertion that Hayes did not know who had the gun is Hayes's deposition testimony that the dispatch call notes stated, "[o]ne neighbor had – possibly had a gun and the other neighbor possibly punched the other. They didn't specify which one, nor did they give like, you know, details." ECF No. 44-2 at 48:1-4. But Defendants filed a copy of the dispatch call notes in support of their motion, and, as far as the Court can tell, it does not reference a gun at all. ECF No. 44-1.

- 5 -

that a limited entry into Maclin's apartment was justified to ensure he did not grab the gun to harm her or her partner.

Maclin responds that Hayes knew he did not have a gun. He notes that Hayes's partner testified that Taylor admitted to the officers that he had the gun *before* the officers went to Maclin's apartment. *See* ECF No. 46-2 at p. 22:8-21.[2] Maclin therefore reasons Hayes did not have a legitimate concern that Maclin could be retrieving the gun when he went back inside his apartment, and thus "there [wa]s no reason to think he had a weapon or had been violent or might become violent." ECF No. 45 at p. 6. He claims that Hayes admitted as much in her deposition testimony: when she was asked whether she believed that she had legal authority to step partly into Maclin's apartment, she responded, "No." ECF No. 46-1 at 103:4-10.

As an initial matter, additional excerpts from Hayes's testimony clarify that she believed entry was necessary to ensure her safety:

> Q: Okay. Okay. When you did it, did you know you didn't have the legal authority to do it?
>
> A: When I did it, I wasn't thinking about the legal authority, I was more so thinking about my safety.

ECF No. 46-1 at 104:9-14. In any event, Hayes's subjective beliefs about the lawfulness of her actions are not controlling here. As the Supreme Court explained in *Anderson*, "[t]he relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [Defendant's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." 483 U.S. at 641.

---

[2] In his response to Defendants' statement of uncontroverted facts, Maclin cited to this deposition testimony to assert that "Hayes asked Taylor if he had a gun and he said yes." ECF No. 46 at p. 4. The Court notes that Defendants failed to controvert this assertion in their reply.

- 6 -

The parties dispute what information Hayes possessed when she entered Maclin's apartment.  But even assuming that Hayes knew a gun involved in the altercation belonged to Taylor, Hayes could still reasonably believe that a limited entry into Maclin's apartment was necessary for her safety.  Maclin had just told the officers that he had punched someone, and he was about to return to the downstairs lobby to the person he punched.  Reasonable officers could believe that the situation could escalate—as Maclin admits that it did[3]—and that Maclin, having recently been violent, could again be violent against the officers or Taylor.  They could further believe that Maclin may try to bring a gun or some other weapon with him to a situation in which another person was armed.  Even if Hayes did not have a particular basis for believing Maclin had a gun at this point, the threat posed by Maclin potentially procuring a weapon was significant, and the intrusion into Maclin's home was minimal, even on Maclin's account of the incident.

In short, the summary judgment record clearly contradicts Maclin's claim that Hayes had no reason to think he "had been violent or might become violent."  Because Hayes could reasonably believe that officer safety justified a limited entry into Maclin's apartment, and thus that the entry did not violate a clearly established right under the Fourth Amendment, Hayes is entitled to qualified immunity on Count I.

### B. First Amendment Claim (Count VII)

In Count VII, Maclin alleges that Hayes violated the First Amendment by telling her partner to arrest him after he threatened to file a complaint.  To prevail on his claim, Maclin must show, among other things, that Hayes lacked probable cause or arguable probable cause to arrest

---

[3] In response to Defendants' statement of material uncontroverted facts, Maclin admitted that "Once in the lobby, officers Hayes and Fairchild observed [Maclin] become more agitated, he began to yell, and attempted to confront Mr. Taylor."  ECF No. 46 at p. 3.

him. *Just v. City of St. Louis, Mo.,* 7 F.4th 761, 768 (8th Cir. 2021) (citing *Thurairajah v. City of Fort Smith, Arkansas*, 925 F.3d 979, 984 (8th Cir. 2019)). " 'The substance of all definitions of probable cause is a reasonable ground for belief of guilt' under state law." *Ross v. City of Jackson, Missouri*, 897 F.3d 916, 920 (8th Cir. 2018) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010). Whether there is a reasonable ground for belief of guilt is an objective question that "depends upon . . . the facts known to the arresting officer at the time of the arrest." *Id.*

Defendants argue that Hayes is entitled to qualified immunity because she had a reasonable belief that Maclin committed a crime. Though Defendants do not specify which offense Hayes had probable cause to believe that Maclin had committed, Missouri law regarding assault in the third degree and in the fourth degree are the crimes most applicable here. "A person commits the offense of assault in the third degree if he or she knowingly causes physical injury to another person." Mo. Rev. Stat. § 565.054.1. And "[a] person commits the offense of assault in the fourth degree if . . . [t]he person attempts to cause or recklessly causes physical injury, physical pain, or illness to another person." Mo. Rev. Stat. § 565.056.1(1). Based on the facts described above, an officer could reasonably believe that Maclin committed either of these crimes.

Maclin argues that his admission that he hit Taylor does not "automatically" indicate that he committed a crime because he told Hayes that he was acting in self-defense. ECF No. 45 at p. 7. He also reiterates that Hayes arrested him only after he expressed his intention to file a complaint. But even though the timing of Maclin's arrest could suggest an improper motive, an official's action "colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

Maclin's account of events does not diminish the reasonability of Hayes's belief that he committed third- or fourth-degree assault. *See Just v. City of St. Louis, Missouri*, 7 F.4th 761, 768 (8th Cir. 2021) (plaintiff's argument that the ostensible victim and witness were not credible did not diminish the officer's probable cause to arrest plaintiff). Taylor told the officers that he thought Maclin was about to hit him when he displayed his gun. Maclin admitted that he did in fact hit Taylor. Hayes and her partner also witnessed Maclin become agitated, yell, and attempt to confront Taylor. On these facts, the officers could reasonably believe that Maclin was not acting in self-defense but was the aggressor in the situation with Taylor, notwithstanding Maclin's protestations to the contrary.

Because Hayes had probable cause to believe Maclin had committed a crime, and thus that the arrest did not violate a clearly established right under the First Amendment, Hayes is entitled to qualified immunity on Count VII.

### C. Municipal and Supervisory Liability Claims (Counts II–VI and VIII–XII)

In Counts II–VI and VIII–XII, Maclin assert claims against Hayes's supervisors and the City for failing to train and supervise her and for perpetuating an unconstitutional custom that caused her to violate his First and Fourth Amendment rights. The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim. Similarly, to maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." *Moore v. City of Desloge*, 647 F.3d 841, 849 (8th Cir. 2011). Because Hayes did not violate Maclin's First or Fourth Amendment rights, Maclin's municipal and supervisory liability claims must fail. The Court will accordingly grant summary judgment for the Supervisor and City Defendants on Counts II–VI and VIII–XII.

### D. False Imprisonment Claim (Count XIII)

That leaves one claim remaining: Maclin's state-law claim for false imprisonment. In Defendants' motion to dismiss, they argued that Hayes was entitled to official immunity and sovereign immunity on this claim. They did not, however, reassert those arguments in the current motion for summary judgment. Nor did they advance any other argument that they are entitled to judgment on this claim. The upshot is that Defendants have shown they are entitled to summary judgment on Maclin's federal question claims—the claims over which the Court exercised original jurisdiction under 28 U.S.C. § 1332—but not Maclin's sole state law claim. The Court must accordingly consider whether to continue to exercise supplemental jurisdiction over Maclin's state law claim. *See* 28 U.S.C. § 1367(c)(3).

Generally, when all federal claims are dismissed on a motion for summary judgment, "the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). The Court is inclined to agree that these factors support declining jurisdiction over Maclin's state-law claim as well. However, out of an abundance of caution, the Court will request the parties to submit briefs explaining their positions on whether the Court should exercise jurisdiction over Maclin's remaining claim and, if so, on the merits of the claim.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' motion for summary judgment [ECF No. 42] is **GRANTED**.

**IT IS FURTHER ORDERED** that no later than **April 12, 2024**, the parties shall submit briefs explaining their positions on the Court's exercise of supplemental jurisdiction in accordance with this Memorandum and Order.

Dated this 29th day of March 2024.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE